[No. 16091.  *En Banc.*  February 15, 1921.]

JOHN J. MALIM *et al., Appellants* v. HENRY BENTHIEN
*et al., Respondents.*[1]

CONSTITUTIONAL LAW .(101, 103)—DRAINS (1)—SPECIAL PRIVIL-
EGES—EQUAL PROTECTION OF THE LAWS.  The diking and drainage act,
Rem. Code, § 4107, is unconstitutional in that it denies equality and
grants special privileges to some which it denies to others, in the
provision by which the judgment upon maximum benefits is made
final and conclusive as to the landowners, but not as to the com-
missioners who may as often as they please have the same opened
or avoided by like proceedings to the same effect.

SAME.  The diking and drainage act, Rem. Code, § 4107, is uncon-
stitutional in that it denies equality and grants special privileges to
some which it denies to others, in the provision whereby owners of
land within the district proper. are entitled to vote at elections
governing the district and the levy of taxes, while others in the ex-
tended area taxed for the improvements have no vote or voice in
the matter.

Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered July 7, 1920, dis-
missing an action upon sustaining a demurrer to a
complaint for an injunction.  Reversed.

*Gordon & Nolte* and *Bates & Peterson,* for appel-
lants.

*F. Campbell* and *Frank D. Nash,* for respondents.

TOLMAN, J.—Hylebos Creek Diking District was
duly organized under the diking and drainage act of
1895, and its boundaries fixed at the time of such or-
ganization.  Under the amendatory act of 1913, Laws
of 1913, p. 267; Rem. Code, § 4107, the respondents, as
the board of commissioners of the district, instituted
proceedings in the superior court for Pierce county,
setting up that lands without the district as originally
established· were being benefited by the diking system

[1]Reported in 196 Pac. 7.

which had been installed, and sought to have the lands in such extended area outside of the original district assessed for the benefits thus received. A hearing was had, the petition granted, and a jury empaneled to try the issue of the benefits to the land within the extended area for the purpose of future assessments to pay the cost of the maintenance of the system. Appellants here, plaintiffs below, were all defendants in that proceeding, duly served with process, and therein contended that their lands were not benefited by the maintenance of the diking system, and also there raised the question of the constitutionality of the statute. The jury found that the lands in the extended area were all benefited by the diking system, assessed the benefits separately against each tract of land for the specific purpose, stated in each verdict, of the future maintenance of the system, and a judgment and decree was entered upon the verdict, from which no appeal was ever taken.

Thereafter this action was brought by appellants to enjoin the levying and collection of the assessments against their lands lying within such extended area. They charge that, in causing the maximum benefits to be assessed, the commissioners of the diking district acted arbitrarily, fraudulently, capriciously and upon a wholly unfair and inequitable rule in fixing the maximum benefits to the several tracts of land belonging to them respectively, causing the amount of the benefits to vary from twenty per cent of the maximum benefits to seventy-five per cent in some instances of the true maximum benefits received, and that, by reason thereof, the cost of maintenance of the said improvement cannot be apportioned ratably and equitably; and also charge that the statute is unconstitutional and void as violative of § 12, art. I, of the constitution of the state of Washington, and of the rights,

privileges and immunities conferred by § 1 of the fourteenth amendment to the constitution of the United States, and of the fifth amendment to the constitution of the United States. A demurrer to the complaint was sustained, and the plaintiffs electing to stand on their complaint, judgment of dismissal followed, from which this appeal is prosecuted.

If the statute be in fact unconstitutional and void, then there was no law authorizing such a proceeding as that complained of, the court was without jurisdiction, and its judgment would be not voidable, but absolutely void. *Elliott v. The Lessee of William Peirsol,* 1 Peters (U. S.) 328, 7 Law Ed. 326; *Kizer v. Caufield,* 17 Wash. 417, 49 Pac. 1064; *McNamee v. Tacoma,* 24 Wash. 591, 64 Pac. 791; *State ex rel. Redlinger v. Superior Court,* 113 Wash. 244, 193 Pac. 676.

The statute under which it was sought to assess appellants' lands, so far as here material, is as follows:

"If at any time it shall appear to the board of diking commissioners that any lands within or without said district as originally established are being benefited by the diking system of said district and that said lands are not being assessed for the benefits received, or that any lands within said district are being assessed out of or not in proportion to the benefits which said lands are receiving from the maintenance of the diking system of said district, and said board of diking commissioners shall determine that certain lands, either within or without the boundaries of the district as originally established, should be assessed for the purpose of raising funds for the future maintenance of the diking system of the district, or that the assessments on land already assessed should be equalized by diminishing or increasing the same so that said lands shall be assessed in proportion to the benefits received, said commissioners shall file a petition in the superior court in the original cause, setting forth the facts, describing the lands not previously

assessed and the lands the assessments on which should be equalized, stating the estimated amount of benefits per acre being received by each tract of land respectively, giving the name of the owner or reputed owner of each such tract of land, and praying that such original cause be opened for further proceedings for the purpose of subjecting new lands to assessment or equalizing the assessments upon lands already assessed, or both.

"Upon the filing of such petition, summons shall issue thereon and be served on the owners of all lands affected, in the same manner as summons is issued and served in original proceedings, as near as may be, and if such new lands lie within the boundaries of any other diking district, said summons shall also be served upon the commissioners of such other diking district.

"In case any of the new lands sought to be assessed in said proceeding lie within the boundaries of any other diking district, and the diking commissioners of such other district believe that the maintenance of the dike or dikes of such other district is benefiting lands within the district instituting the proceedings, said diking commissioners of such other districts shall intervene in such proceedings by petition, setting forth the facts, describing the lands in the district instituting the proceedings which they believe are being benefited by the maintenance of the diking system of their district, and praying that the benefits to such lands may be determined and such lands subjected to assessment for the further maintenance of the diking system of their district, to the end that all questions of benefits to lands in the respective districts may be settled and determined in one proceeding, and such petitioners in intervention shall cause summons to be issued upon such petition in intervention and served upon the commissioners of the diking district instituting the proceeding and upon the owners of all lands sought to be affected by such petition in intervention." Laws of 1913, p. 267, § 1; Rem. Code, § 4107.

A careful examination of the part of the statute quoted indicates a two-fold purpose: first, to subject

to assessment all lands benefited by the diking system whether within or without the district, which have not theretofore been assessed for benefits received, and to require such lands to pay their *pro rata* for the maintenance of the diking system thereafter without limitation as to time; and second, that, where lands within the district are being assessed out of or not in proportion to the benefits received, to equalize by diminishing or increasing the assessment thereon so that all lands affected shall be assessed in proportion to the benefits received, and permitting the opening of the original cause for either or both of these purposes.

Appellants contend that the statute violates § 12, of art. I, of the state constitution, which provides, in effect, that no law shall be enacted granting to any citizen privileges or immunities which, upon the same terms, shall not be equally open to all citizens; and argue that, by the terms of the statute, the diking commissioners may at any time file a petition in the superior court in the original cause praying for a readjustment or redetermination of the question of maximum benefits, but the statute does not give to the landowners any right to initiate any proceedings for such purpose, and that, by reason thereof, the commissioners may litigate the question of maximum benefits as often as they see fit, the judgment entered being final and conclusive as to the landowners, but never final, conclusive or *res judicata* as to the commissioners, they being privileged to reopen the cause and re-litigate the matter as often as they see fit, each time obtaining a judgment final and binding upon the landowners, but which they may avoid by instituting like new proceedings until such time as they obtain a judgment satisfactory to them.

The statute seems open to the construction thus put upon it, and if we were to meet the argument thus ad-

vanced, and could demonstrate that this provision does not grant to the commissioners the privileges which are not open to the landowners and which the constitution forbids, we would then be met by appellants' further contention that the statute violates § 19, of art. I, providing that all elections shall be free and equal, and that it denies the principle of self-government, as it existed from our earliest history and is preserved in our constitution taken as a whole. These contentions are based upon the fact that, while the statute does grant the landowners of the extended area a right to appear and defend in court against the assessment upon their lands, it affords them no other right, and gives them no voice in the election of the commissioners of the district, and no means of being heard in the conduct of its affairs. The voters owning the lands within the limits of the district proper, as constituted before the extended area is found to be benefited, remain the sole governing power and the only electorate, and retain in their hands, as before, the entire power and authority to conduct all of the affairs of the district without regard to the rights or wishes of the owners of land in the extended area, and may, by the means thus granted to them, say what the annual cost of maintenance shall be, leaving the inarticulate owner in the extended area to silently pay what they will.

This statute which we are now considering was considered and held to be constitutional by a Department of this court in *State ex rel. Conner v. Superior Court,* 81 Wash. 480, 143 Pac. 112, but it is only fair to say that none of the points now urged were raised or argued in that case. We are not now satisfied that the fact that diking districts are municipal corporations only in a limited sense, having no power to incur obligations payable by general taxation, affects the ques-

tion. They are *quasi* municipal corporations, and their officers are elected and exercise their powers by reason of the municipal or public character of the corporation which they represent. What fairness or equality can there be in permitting the electors of the district proper to have the sole power to elect its officers, dictate its policy, and determine what money shall be spent and how, in the maintenance of the system, so long as time shall last or the dikes may be kept effective, while those without the district proper and subject to its taxing power, having no voice whatever in the selection of its officers or determining its policy, shall be called upon to pay their *pro rata* of the maintenance year after year without any limitation of time? To uphold such a course would be a denial of the principle upon which our government is founded, and which as a nation we have always maintained is the only true principle upon which a free government can be founded and maintained.

Among the many authorities which support these views are the following: Cooley, Taxation (3d ed.), p. 250; *Pacific Sheet Metal Works v. Roeder,* 26 Wash. 183, 66 Pac. 428; *Anderton v. Milwaukee,* 82 Wis. 279, 52 N. W. 95, 15 L. R. A. 830; *People v. Dooley,* 75 N. Y. Supp. 350, 63 N. E. 815; *Waters v. Langdon,* 40 Barb. (N. Y.) 408; *Gulf, Colorado etc. R. Co. v. Ellis,* 165 U. S. 150; *State v. Garbroski,* 111 Iowa 496, 82 N. W. 959, 82 Am. St. 524, 56 L. R. A. 570; *Durkee v. Janesville,* 28 Wis. 464, 9 Am. Rep. 500; *Magoun v. Illinois Trust & Sav. Bank,* 170 U. S. 283, 42 Law Ed. 1037; *People ex rel. Bolton v. Albertson,* 55 N. Y. 50; *Wells v. City of Weston,* 22 Mo. 384, 66 Am. Dec. 627.

We are forced to the conclusion that, in the two particulars hereinbefore pointed out, the statute is unconstitutional, in that it denies equality and grants privileges to some which it denies to others; that

*State ex rel. Conner v. Superior Court, supra,* so far as it announces a contrary doctrine, should be and is overruled; and the judgment appealed from is .reversed, and the cause remanded with instructions to overrule the demurrer.

PARKER, C. J., MITCHELL, BRIDGES, MOUNT, MACKINTOSH, and HOLCOMB, JJ., concur.