Edward J. KOLLAR and James D. Kriegh, Plaintiffs,

v.

CITY OF TUCSON et al., Defendants.

Civ. No. 70 124 Tuc.

United States District Court, D. Arizona.

Nov. 13, 1970.

Richard C. Harris, Dowdall, Harris, Hull & Terry, Tucson, Ariz., Earl H. Carroll, Evans, Kitchel & Jenckes, Phoenix, Ariz., for plaintiffs.

Lewis C. Murphy, City Atty., City of Tucson, Tucson, Ariz., Fred H. Rosenfeld, Gust, Rosenfeld & Divelbess, Phoenix, Ariz., for defendants.

OPINION

Before ELY, Circuit Judge, and WALSH and COPPLE, District Judges.

ELY, Circuit Judge:

Plaintiffs, residents and qualified electors of Pima County, Arizona, sought to vote in a recent Tucson Water Revenue Bonds Project election, conducted on August 25, 1970. They were denied such privilege because they were not residents of the City of Tucson, and an Arizona statute limits the franchise in municipal water revenue bond elections to "qualified electors of the municipality."[1]

Plaintiff Kollar is served by the Tucson waterworks system and claims to have had a substantial pecuniary interest in voting in the bond election since his water rates may reflect additional

1.  Ariz.Rev.Stat.Ann. § 9–523 (West 1956).

revenue needed to pay the principal obligations and the interest thereon. Plaintiff Kriegh receives his water from an independent public service corporation which may be purchased by the City of Tucson with funds generated from the bond election; consequently, he fears higher water rates and less adequate service. Both plaintiffs claim deprivation of rights, privileges, and immunities under color of state law,[2] violation of their civil rights,[3] and violation of the Equal Protection Clause of the Fourteenth Amendment. They seek a declaration of the unconstitutionality of the Arizona statute [4] and an injunction to restrain future enforcement of the statute and to prevent any further action in relation to the issuance and sale of the bonds in question.[5] Defendants, the City of Tucson and its City Council, have moved for a judgment on the pleadings.

The problem is essentially the residency question—is residency within municipal boundaries a constitutionally valid restriction on the right to vote in municipal water bond elections?

" 'In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.' Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed. 2d 24 (1968). And, in this case, we must give the statute a close and exacting examination. '[S]ince the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.' Reynolds v. Sims, 377

U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964)."

Kramer v. Union Free School Dist., 395 U.S. 621, 626, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969). The earliest test of state laws under the Fourteenth Amendment was the "rational basis" doctrine, under which there was a presumption of constitutionality and under which state restrictions would survive if the reviewing court could conceive of a "rational basis" for the classification. See McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393 1961). See also Kramer v. Union Free School Dist., supra, 395 U.S. at 637, 89 S.Ct. 1886 (Stewart, J., dissenting); Kotch v. Board of River Port Pilot Comm'rs, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947). Beginning with the reapportionment decisions following Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Supreme Court has accorded increasing recognition to the importance of the franchise. See, e.g., Harper v. Virginia Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L. Ed.2d 169 (1966); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Wesberry v. Sanders, 376 U.S. 1, 84 S. Ct. 526, 11 L.Ed.2d 481 (1964). In Kramer, supra, the Supreme Court recently rejected the rational basis doctrine, when applied to the question of franchise, and emphasized the "compelling interest" doctrine.

"Statutes granting the franchise to residents on a selective basis always pose the danger of denying some citizens any effective voice in the governmental affairs which substantially affect their lives. Therefore, if a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court

---

2. 28 U.S.C. § 1343(3) (1964).

3. 42 U.S.C. § 1983 (1964); 28 U.S.C. §. 1343(4) (1964).

4. 28 U.S.C. §§ 2201, 2202 (1964).

5. This three-judge court was convened pursuant to 28 U.S.C. §§ 2281. 2284 (1964).

must determine whether the exclusions are necessary to promote a compelling state interest."

395 U.S. at 626–627, 89 S.Ct. at 1889. This new test, previously mentioned in *Carrington, supra,* and in *Harper, supra,* was later amplified in Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) and in City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).[6] Before considering whether the state has a compelling interest in its restrictions, it must be determined that the disenfranchised plaintiffs are "as substantially affected" and interested in the elective issue as are the enfranchised. *See Cipriano, supra,* 395 U.S. at 704–706, 89 S.Ct. 1897.

*Kramer* involved a state statute which required, as a condition to a resident's right to vote in school district elections, that he be qualified to vote in federal elections and that he either own or lease taxable real property in the district or be a parent of a child or children enrolled in local public schools. Kramer was a bachelor who did not own property, and the Court held that the additional requirements, beyond those which might have been reasonable, as to citizenship, age, and residency, violated the Equal Protection Clause of the Fourteenth Amendment. In our case, the defendants contend that residency should constitute a factor of the compelling interest doctrine, and thus, without the residency prerequisite, the rational basis test controls. We disagree, believing that the Supreme Court, in *Kramer,* merely applied its constitutional conclusions to the facts there presented. Residency was not at issue in *Kramer, Kolodziejski,* or *Cipriano,* and in the latter case, the Court employed the phrase "otherwise qualified voters." We are not persuaded that the Court intended to exempt residency qualifications from the new test. Although *reasonable* residency requirements have been held valid on numerous occasions,[7] we agree that, under the more recent doctrine, there must be a compelling interest for the exclusion.

Unlike the cases wherein courts have invalidated one-year residency requirements,[8] our case involves a challenge to boundary definitions of residency. Under Arizona law the municipality has no obligation to provide nonresidents with water service nor can the nonresident compel such service. But the municipality must provide equal and adequate service for its residents. If there were a water shortage, the residents have a priority over the nonresident contract purchasers. *See* City of Phoenix v. Kasum, 54 Ariz. 470, 473, 97 P.2d 210, 212 (1939). Thus, we here find that neither plaintiff is "as sufficiently affected by and directly interested as the residents" in the challenged bond election. Generally, residents have a greater interest in the outcome of local elections than do nonresidents. Pecuniary interest was disregarded by the Su-

6. In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322. 22 L.Ed.2d 600 (1969), the Court used the "compelling government interest" standard to strike down certain residency requirements conditioning the right to receive welfare benefits. For recent cases adopting the compelling interest doctrine, *see* Stapleton v. Clerk for City of Inkster, 311 F.Supp. 1187 (E.D.Mich.1970); Blumstein v. Ellington, (M.D.Tenn. Aug. 31, 1970); Burg v. Canniffe, 315 F.Supp. 380 (D.Mass. 1970), appeal granted, 39 U.S.L.W. 3168 (U.S. Oct. 20, 1970).

7. *See, e. g.,* Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965);

Lassiter v. Northampton County Bd. of Elections. 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959); Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573. 48 L.Ed. 817 (1904); Drueding v. Devlin, 234 F.Supp. 721 (D.Md.1964), aff'd per curiam, 380 U.S. 125. 85 S.Ct. 807, 13 L.Ed.2d 792 (1965). It should be noted that all these cases were decided before *Kramer.*

8. *See, e. g.,* Blumstein v. Ellington, (M.D. Tenn. Aug. 31, 1970); Burg v. Canniffe, 315 F.Supp. 380 (D.Mass.1970), appeal granted, 39 U.S.L.W. 3168 (U.S. Oct. 20, 1970).

 

preme Court in *Kolodziejski*, the Court finding no meaningful distinction between real property owners and other residents in general revenue bond elections even though the real property owners in that case would have been required to pay property taxes to support the bond repayments. Here, the plaintiff Kollar chose to live outside the municipality and to contract for his needed water. He should not receive certain benefits of city dwelling—city utility services and the privilege of voting in bond elections involving these services—without accepting the burdens—living within the municipal boundaries and paying municipal taxes. Plaintiff Kriegh's contingency, purchase of his existing water source by the city, is a less compelling interest than that of Kollar, and if the contingency should occur, he would then be in the same posture as Kollar.

The necessity of a boundary restriction in municipal elections, rather than some other less definitive qualification, the generally greater stake of residents in local elections, and the necessity to define the electorate in advance of election date and properly to administer the elections are sufficiently compelling interests, in this instance, for Arizona's limitation on an absolute right to vote. To allow the municipal franchise to all persons with a pecuniary interest would not permit of a manageable standard or adequately define a cohesive interested group of electors.

We have meticulously examined the plaintiffs' briefs which, incidentally, are extremely well done, but we find no deprivation of equal protection under the law, no violation of civil rights, and no infringement of any other constitutionally protected right or privilege. Accordingly, the plaintiffs' motion for a preliminary injunction and for a declaratory judgment in their favor is denied.

The defendants' motion for a judgment on the pleadings is granted, and they will prepare and submit a proposed judgment to that effect.[9]

---

9. Findings of fact and conclusions of law are, of course, not required when a disposition is made, such as here, by summary judgment. Fed.R.Civ.P. 52(a). Our opinion recites the essential factual and legal considerations which bear upon our conclusion.