[No. 14925. Department Two. January 10, 1919.]

E. M. WHITTEN *et al., Respondents,* v. A. SILVERMAN *et al, Appellants.*[1]

ELECTIONS (56)—CONTESTS — JURISDICTION—"PRECINCTS"—DIKING DISTRICT. A diking district is not a "precinct," within Rem. Code, § 4941, authorizing contests of elections for all county and precinct officers, in view of the diking law, Id., §§ 4091 to 4136, making a diking district an organized public entity, distinct from and free from all control by the county; and in the absence of express statutory authority the courts have no jurisdiction of a contest of an election for commissioners of a diking district.

Appeal from a judgment of the superior court for Wahkiakum county, Hewen, J., entered May 1, 1918, upon findings in favor of the plaintiffs, in an election contest, tried to the court. Reversed.

*Henry Crass,* for appellants.
*W. F. Magill* and *Geo. T. Hanigan,* for respondents.

PARKER, J.—This is an election contest proceeding, commenced in the superior court for Wahkiakum county by Whitten, Harper and Risk, claiming to be the duly elected commissioners of Diking District No. 2 of that county, against Silverman, Foster and Burke, who, upon the face of the return, appear to have been duly elected such commissioners at an election held for the choosing of commissioners of that district on March 5, 1918. Trial in the superior court for that county upon the merits resulted in findings and judgment in favor of Whitten, Harper and Risk, declaring them to be the duly elected commissioners of the district, and annulling the election of Silverman, Foster and Burke. The contest was waged and the judgment rendered upon the ground of illegal votes hav-

[1]Reported in 177 Pac. 737.

ing been cast at the election for Silverman, Foster and Burke which, if excluded from the count, would result in Whitten, Harper and Risk receiving a majority of the votes cast at the election. Silverman, Foster and Burke have appealed from the judgment of the superior court to this court.

It is contended in appellants' behalf that the superior court is without jurisdiction to entertain an election contest between rival claimants for the office of diking district commissioner, and that the superior court erred in overruling the challenge to its jurisdiction made in appellants' behalf. The contest was instituted in the superior court under Rem. Code, § 4941 *et seq.,* relating to election contests in the superior court between claimants for *"county"* and *"precinct"* offices. That section, in so far as we need here notice its provisions, reads as follows:

"Any elector of the proper county may contest the right of any person declared duly elected to an office to be exercised in and for such county; and also any elector of a precinct may contest the right of any person declared duly elected to any office in and for such precinct, for any of the following causes: . . .

"(5)   On account of illegal votes."

The argument of counsel for appellants is, in substance, that, since this is the only statute we have providing for the prosecution of election contests in the courts, and since it in terms provides for such contests only with reference to *"county"* and *"precinct"* offices, neither of those terms can be held to mean *"diking district,"* and therefore there is no authority for the prosecution of an election contest in the courts between rival claimants to the office of diking district commissioner. Counsel invoke the law as announced by this court in *Parmeter v. Bourne,* 8 Wash. 45, 35 Pac. 586, 757, holding that the superior court has no

jurisdiction over the subject-matter of a contest of a county seat election; and also *State ex rel. Fawcett v. Superior Court,* 14 Wash. 604, 45 Pac. 23, 33 L. R. A. 674, holding that the superior court has no jurisdiction of the subject-matter of an election contest between claimants to a city office. In the *Fawcett* case, Judge Dunbar, speaking for the court, said:

"We think the almost universal rule is that, when the legislature has acted, and has prescribed subjects of contest, such subjects are to the exclusion of others. *Jennings v. Joyce,* 116 Ill. 179 (5 N. E. 534). To the effect that contest of the election is a judicial function only in so far as made such by special statute, see *Reynolds & Henry Const. Co. v. Police Jury of Ouachita Parish,* 44 La. An. 863 (11 South. 236).

"Sec. 427 of the Gen. Stat. [now § 4941, Rem. Code] · provides that 'any elector of the proper county may contest the right of any person declared duly elected to an office to be exercised in and for such county; and also any elector of a precinct may contest the right of any person declared duly elected to any office in and for such precinct,' etc. This is all the provision the law makes for contesting election cases, and the specific provisions made in this section must, under all rules of statutory construction, be held to fall under the rule that the expression of one excludes the expression of the other, and therefore it must be concluded that there is no statutory provision for contesting the election of a municipal officer."

The statute has since then remained unchanged, and the holding of those cases has not been departed from. It would seem, therefore, that, unless the word "precinct," as used in the election contest statute, can be held to mean "diking district," an election of diking district commissioners is no more subject to contest in the courts than is a city office.

The real question then is, Are the commissioners of Diking District No. 2 of Wahkiakum county precinct

officers within the meaning of Rem. Code, § 4941, of
the election contest statute above quoted from? We
have, therefore, to inquire concerning the nature of
the organization and powers of diking districts under
our statutes, and see whether such a district is a pub-
lic corporation and possesses an entity and powers of
managing its own affairs independent of county con-
trol, or is a mere precinct or district of the county,
under county control. If the former, it would seem
that it could not be regarded as a precinct within the
meaning of Rem. Code, § 4941, above quoted from;
while if the latter, it might possibly be held to be a
precinct within the meaning of that section, even
though it be called a "district." In Rem. Code, §§ 4091
to 4136, inclusive, relating to the creation and the
powers of diking districts, we find the following: Sec-
tion 4091 reads as follows:

"Any portion of a county requiring diking, which
contains five or more inhabitants and freeholders
therein, may be organized into a diking district, and
when so organized, such district, and the board of
commissioners hereinafter provided for, shall have
and possess the power herein conferred or that may
hereafter be conferred by law upon such district and
board of commissioners, and such district shall be
known and designated as diking district No. — (here
insert number) of the county of ——— (here insert
the name of county) of the state of Washington, and
shall have the right to sue and be sued by and in the
name of its board of commissioners hereinafter pro-
vided for, and shall have perpetual succession, and
shall adopt and use a seal. The commissioners here-
inafter provided for, and their successors in office,
shall, from the time of the organization of such dik-
ing district, have the power, and it shall be their duty,
to manage and conduct the business and affairs of the
district; make and execute all necessary contracts, em-
ploy and appoint such agents, officers and employees
as may be required, and prescribe their duties, and

perform such other acts as hereinafter provided, or that may hereafter be provided by law.''

Sections 4095 and 4096 provide for the election of commissioners, and also the qualifications of electors for that purpose. Section 4097 expressly gives to the district the power of eminent domain, to be exercised through its commissioners by the prosecution of condemnation proceedings in the courts, to acquire property and rights of way for the construction of dikes and improvements incidental thereto. Other sections give to the commissioners of the district complete supervision and control of the construction and maintenance of the dikes and other improvements of the district; the power of levying special assessment taxes, from time to time, in proportion to benefits theretofore determined by a jury or the court, and to certify their levies so made to the county authorities, to the end that they be spread upon the tax rolls of the county and collected by the county treasurer for the district; the power to issue warrants and bonds evidencing indebtedness of the district, payable from the funds of the district by the county treasurer, who becomes *ex officio* treasurer of the district, as he does of school districts. Indeed, upon the organization of the district, the county authorities have no authority or control over the district, other than to become mere agents therefor in spreading upon the tax rolls its special assessment taxes from time to time, and the collection and paying out of the same by the county treasurer upon warrants issued by the commissioners of the district. Thus it will be seen that the district is a separate and distinct organization from that of the county, managing its own affairs, and living its own life, free from control of the county authorities. We are quite unable, in the light of the statutes under

which Diking District No. 2 exists, and the decisions
of this court above noticed, to hold that the superior
court had any jurisdiction whatever over the election
contest sought to be waged by respondents in that
court.

In view of the fact that diking districts derive their
revenue from taxes in the nature of special assess-
ments, based upon benefits, they may not be municipal
corporations in the sense that a city or town is such a
corporation.   Probably the holding of this court in
the early case of *Board of Directors Middle Kittitas
Irr. Dist. v. Peterson,* 4 Wash. 147, 29 Pac. 995, would
lead to this conclusion; but that they are public organ-
ized entities possessing such an independent existence
and powers as to warrant us calling them public cor-
porations, we think there can be little doubt.   Such
was recognized to be the nature of irrigation districts
in the *Kittitas Irrigation* case, though such districts
were held not to be municipal corporations within the
meaning of those words as used in § 6, art. 8, of our
constitution.   If a diking district was, under our stat-
utes, an arm of the county government, and its af-
fairs in some considerable measure were subject to
control by the county authorities, there might be some
substantial ground for arguing that it would then be
a precinct within the meaning of Rem. Code, § 4941,
above quoted from, even though called "district."

Since an election contest is not a matter of judicial
cognizance except it be expressly made so by statute;
and since we have no statute providing for an election
contest between claimants to the office of diking dis-
trict commissioner, we see no escape from the conclu-
sion that the superior court had no jurisdiction over
the subject-matter of this case, and that its judgment
must, therefore, be reversed and held for naught.   It

may seem that the law ought to be otherwise. If so, it should be so made by the legislature and not by the courts.

The judgment is reversed.

MAIN, C. J., HOLCOMB, MOUNT, and FULLERTON, JJ., concur.