'Submitted on briefs October 28, 1918, reversed and remanded January 21, 1919.

## ELDREDGE v. MILL DITCH CO.

### (177 Pac. 939.)

**Execution—Property Subject to Levy—Equitable Interests.**

1. Intangible and uncertain interests which involve the rights of third parties, such as an equitable title in land where the legal title is not in the debtor, are not subject to execution.

**Execution—Property Subject to Levy—Trusts.**

2. Equity will not permit the levy of an execution upon a legal title held by a debtor as trustee for a third party, as in the case of an assignee for the benefit of creditors or an ordinary naked trust.

[As to equities which are not subject to levy under statutes subjecting trust estates to execution, see note in 97 Am. Dec. 304.]

**Execution—Property Subject to Levy—Untransferable Interests.**

3. Interests which cannot be transferred, such as franchises of corporations, rights to office, etc., are not subject to execution.

**Execution—Property Subject to Levy—Public Interest.**

4. Property which is so involved with the interest of the public that it cannot be levied upon and sold without interfering with the rights of the public, such as corporations like canals and railways, is not subject to execution.

**Execution—Property Subject to Levy—Mutual Water Companies.**

5. Property of a mutual water company, not organized for the purpose of selling water or as a profit corporation but for the sole purpose of transmitting and delivering to appropriators and owners of the water the quantity to which each is entitled, the relation of the corporation being that of a holding company, trustee or agent, is not subject to levy and sale under execution.

**Waters and Watercourses—"General Corporation"—Ditch Companies.**

6. A mutual ditch company, not organized for the purpose of selling water or as a profit corporation but for the sole purpose of transmitting and delivering to appropriators and owners of the water the

quantity to which each is entitled, is not a "general corporation,"· within the meaning of Section 6525, L. O. L.

**Corporations—"Public Service Corporation"—Ditch Companies.**

7. A mutual water company, organized for the sole purpose of transmitting and delivering to the appropriators and owners of the water the quantity to which each is entitled without profit, is not a "public service corporation," as that term is usually applied.

**Carriers—Water Companies—"Common Carrier."**

8. A mutual ditch company, not organized for the purpose of selling water or as a profit corporation, but for the sole purpose of transmitting and delivering to the appropriators and owners of water the quantity to which each is entitled, is not a "common carrier" of water.

From Malheur. DALTON BIGGS, Judge.

In Banc.

This is a suit in equity brought to enjoin and finally to set aside the execution sale.of the water rights and ditch property of the Mill Ditch Company, a mutual corporation for the distribution of water; to have a receiver appointed to take charge of such ditch and water rights, and levy the necessary assessments to pay off the debts of the corporation.

The defendant, Mill Ditch Company, is a corporation organized for the purpose of diverting water from the Malheur River and distributing it through the ditches in question to the stockholders in proportion to the shares of stock held by each stockholder. The shares of stock provided by the Articles of Incorporation are 4,750 of the value of $10 per share, and supposed to represent the full capacity of the ditch, one miner's inch for each share of stock.

The plaintiff is alleged to be a stockholder in such corporation owning four hundred shares· of stock therein and entitled to such number of inches of water from said ditch, and has used the same upon his land for a number of years irrigating the same, and he alleges he has no other means for the irrigation of his land.

The defendant, United States National Bank, had at the beginning of this litigation, a judgment against the

Mill Ditch Company for the sum of $1,480 with interest, attorneys' fees, etc. It had levied its execution upon the entire property which, nominally at least, belonged-to the Mill Ditch Company, including its entire water and ditch rights, and was about to sell the same under said execution at the time of the commencement of this suit, after which the property was actually sold under the execution for the sum of $1,784.79. The complaint was then amended showing the completed sale, and it is now sought to set aside the same. A demurrer to the complaint was sustained in the lower court, and the case comes here upon the demurrer and the allegations of the complaint alone.

Reversed and Remanded.

For appellant there was a brief over the names of *Mr. William E. Lees, Mr. William H. Brooke* and *Mr. P. J. Gallagher.*

For respondents there was a brief over the names of *Messrs. Davis & Kester.*

BENNETT, J.—It appears from the complaint that the defendant Hope is the owner of the majority of the stock of the Mill Ditch Company, and he is also a director of the defendant, United States National Bank. There were allegations in the complaint regarding the conduct on the part of Hope to the effect that he had intentionally permitted the assessments of the Mill Ditch Company upon the stockholders to lapse by reason of his majority control, and thus to permit the company to become insolvent, so far at least as the present payment of its indebtedness is concerned. The allegations of the complaint strongly suggest a collusion between Hope and the bank, but there is no direct allegation of such collusion, and we can find no direct allegation of any

improper conduct of the bank itself which might estop it from proceeding on its execution.

The case is presented, on behalf of both appellant and respondent, upon the sole question as to whether or not the water rights, ditches, etc., held by mutual water-serving company for the benefit of its stockholders, can be levied upon and sold to satisfy an execution against the corporation, and it will be considered upon that ground alone.

The question presented is a new and interesting one. Section 227, L. O. L., as amended, provides:

"All property, including franchises, or rights or interest therein, of the judgment debtor, shall be liable to an execution, except as in this section provided. The following property shall be exempt from execution, if selected and reserved by the judgment debtor or his agent at the time of the levy, or as soon thereafter before sale thereof as the same shall be known to him and not otherwise.

"Subd. 6.   All property of the state or any county, incorporated city, town, or village therein, or of any other public or municipal corporation *of like character.*"

Just what is meant by "like character" and just how closely a public corporation must resemble a town or village, etc., in order to be within the provision, is not very clear.   However it seems to be well settled both generally and in this state that there are some rights and interests, in the nature of property, which, on account of their inherent nature, cannot be effectually reached by an execution at law, and which, on account of their involved character, and of the complications with the rights of third parties, and with public interests, will be protected in a court of equity from an execution at law.

90 Or.—38

1. First: *Intangible and uncertain interests which involve the rights of third parties.* Such an interest is the equitable title in land where the legal title is not in the debtor but in some third person. It seems well settled that such equitable interest is not subject to execution: *Smith* v. *Ingles,* 2 Or. 43; *Bloomfield* v. *Humason,* 11 Or. 229 (4 Pac. 332); *Silver* v. *Lee,* 38 Or. 508 (63 Pac. 882); *Holmes* v. *Wolfard,* 47 Or. 93 (81 Pac. 819).

In the latter case it is said by Mr. Justice Moore, delivering the opinion of the court:

"The rule thus established rests upon the assumption that an equitable interest in real property is an uncertain estate, which, if it could be sold on execution issued on a judgment rendered in a law action, would produce a sum grossly inadequate in proportion to its real value; for most persons, in purchasing real property, insist upon a certainty of the title thereto, and, where there is a doubt in this respect, usually decline to invest their money. If a compulsory sale of such interest upon execution were permissible, there would be little or no competition in bidding. Few people desire to purchase a lawsuit, and the judgment creditor would probably secure the equitable estate for a nominal sum."

2. On the other hand, we may safely assume that equity would not permit the levying of an execution upon a legal title held by a debtor as trustee for a third party, as in case of an assignee for the benefit of creditors, or of an ordinary naked trust. A court of equity would look to the interest of the real beneficiaries and would not permit them to be uselessly embarrassed by the sale of the legal title held by the debtor.

3. Second: *Interests which cannot be transferred.* Examples of this are the franchise of corporations, rights to an office, etc. Where, although the debtor may be such a corporation or, if an individual, may

have an interest in an office in the nature of property, yet because there is nobody who can take such interest, and they are not the subject of transfer from one to another, an execution would be utterly ineffectual.

4. Third: *Property, which is so involved with the interest of the public that it cannot be levied upon and sold without interfering with the rights of such public.* Such are the interests of corporations like canals and railways, even when in some sense held by private corporations, and the interests held by a school district and other public and *quasi*-public organizations.

The case of *Gue* v. *Tide Water Canal Co.* in the United States Supreme Court, 24 How. 257 (16 L. Ed. 635, 65 L. Ed. 635), is a leading case in relation to this class of property.   In that case the judgment creditor of the canal company had caused an execution to be levied upon a house and lot and a wharf and canal locks belonging to the canal company in fee.   It is said in the opinion:

"The Tide Water Canal is a great thoroughfare of trade, through which a large portion of the products of the vast region of country bordering on the Susquehanna River usually passes, in order to reach tide water and a market.   The whole value of it to the stockholders consists in a franchise of taking toll on boats passing through it. * * The property seized by the marshal is, of itself, of scarcely any value apart from the franchise of taking toll, with which it connected in the hands of the company, and if sold under this *fieri facias* without the franchise, would bring scarcely anything; but would yet, as it is essential to the working of the canal, render the property of the company in the franchise, now so valuable and productive, utterly valueless.

"Now it is very clear that the franchise or right to take toll on boats going through the canal would not pass to the purchaser under this execution * * The record and proceedings before us show that there were other creditors of the corporation to a large amount,

some of whom loaned money to carry on the enterprise. And it would be against the principles of equity to allow a single creditor to destroy a fund to which other creditors had a right to look for payment, and equally against the principles of equity to permit him to destroy the value of the property of the stockholders, by dissevering from the franchise, property which was essential to its useful existence.''

5. It seems that all of these questions enter more or less into this case, and all are reasons why the property of this mutual water company held and used for the benefit of its stockholders alone and used for the purpose of transmitting and delivering water appropriated by them, and used upon their respective land; ought not to be permitted to be sold upon an execution against the water corporation.

It seems to be pretty well settled in the states having water codes similar to that of our own state, even in cases of public service corporations organized for profit and selling water to the general public, that the water and ditch rights really belong to the individual appropriator and is appurtenant to the lands upon which the same is used, and that the corporation transmitting the same is in the nature of a holding company or agent for the true owners of the water rights: Wiel on Water Rights (3 ed.), Vol. 2, § 1339, p. 1237, and authorities cited.

How much more so must this be true in the case of a mutual water company, not organized for the purpose of selling water or as a profit corporation, but for the sole purpose of transmitting and delivering to the appropriators and owners of the water the quantity to which each is entitled. The relation here on the part of the corporation seems to be clearly that of a holding company, trustee, or agent for the real owners of the water who are putting it to a beneficial use upon their lands. It would seem clearly that the corporation in

such a case had no interest in the water or ditches which equity would permit it to sell and transfer to outside parties, and thereby deprive the water users of the same, and if this could not be done by private contract it certainly could not be done by an involuntary sale under execution.

The sale in question could work no useful purpose, but would practically destroy the entire property, and embarrass and hinder the owners of the water and perhaps prevent them from obtaining it, at all.

Having reached this conclusion upon this branch of the case it follows that the demurrer should have been overruled in the court below, and it is hardly necessary to consider how far a court of equity in a case of this kind, would interfere to protect the stockholders and other creditors (if there are any) from a wasteful sale, under the principles announced in *Holmes* v. *Wolfard, supra.* It is not to be overlooked, however, that this property which, presumably, cost the amount paid in for stock, $47,500, was sold on this execution for the amount of $1,784, about the exact amount of the judgment claimed, and was bought in even at that price by the creditors. In view of these facts the language of Mr. Justice MOORE in the Holmes case seems particularly pertinent, and it is questionable whether, if the shadowy rights of the corporation were of such a nature that they could be sold at all, it should not be in a court of equity, where the rights of all parties could be protected and the property made to bring some substantial portion of its value, as was suggested by the Supreme Court of the United States in the case of *Gue* v. *Tide Water Canal Co.,* 24 How. 257 (16 L. Ed. 635).

It is also unnecessary to decide how far this corporation and its pecuniary water rights and franchises were exempt from execution as a *quasi*-public corporation.

6–8. That it was not a "general" corporation within the meaning of the latter clause of Section 6525, L. O. L., is clear. It is also clear that it was not a "public service" corporation as that term is usually applied. It was not selling water to the general public at large and was not a common carrier of water. Nevertheless it has many elements of a *quasi*-public corporation. It is dealing with and transmitting property which belonged originally to the public and is of a public character: Section 6575, L. O. L. The legislature has sought to confer upon it the power of eminent domain (Section 6596, L. O. L.) and has declared its use of the water to be "a public and beneficial use and public necessity": *Pringle Falls Power Co.* v. *Patterson,* 65 Or. 474 (128 Pac. 820, 132 Pac. 527). It was distributing water to a portion of the public—to how large a portion does not appear in the complaint.

It seems that such a corporation might be fairly classed as a *quasi*-public one regardless of the fact that it was not a *general* company, and was not engaged in furnishing water to all comers. It was held by the court in *Rathfon* v. *Payette Irr. Dist.,* 76 Or. 610 (149 Pac. 1044), that "District improvement companies are also *quasi*-public corporations." There seem to be no essential differences, which would distinguish them in this regard, between improvement companies and mutual service companies like this one. They are organized under different laws but neither of them is *general* in its character and neither of them is a "public service" corporation. We are constantly broadening in our recognition of the public character of such corporations; and it seems difficult longer to distinguish between the corporations which serve identically the same purpose, because one deals with the whole public, and another deals with a definite group, including ten,

fifty or a hundred persons, all belonging to the same public. Even in the case of towns and villages and school districts, the primary purpose is for the benefit of its particular inhabitants.

In Cook on Corporations (7 ed.), Volume 4, Section 932, it is said:

"The tendency of modern times is to extend the power of government and to bring within the control of legislative action many kinds of business which formerly were considered strictly private. Such is the case with corporations operating a steamship line, or a wharf, a boom, etc. * * Irrigation companies have also during recent years become of very great importance and the subject of much litigation. A statute authorizing condemnation by an individual for irrigation or mining purposes may be constitutional in one state and not in another, depending upon the situation of the state and its possibilities for agricultural and mining industries."

Mr. Wiel, in his work on Water Rights (3 ed.), Volume 2, Section 1338, says, in relation to the rights of water companies under the Water Codes:

"It is closely approaching public ownership of irrigation systems."

And again,

"These things combined have shaped the law of Colorado, Wyoming, and the interior states in the direction that a right to natural resource (with a corresponding interest in the distributing system) belongs to the consumer, with a result fast approaching public ownership": Id., § 1339, p. 1237.

In this case it would be a calamity, to that portion of the public, represented by the water users under the ditch, if such ditch could be closed and their water rights destroyed and transferred, by such an execution sale; and the whole community would be more remotely affected, since they are dependent upon these (and

others like them) for the production of the necessities of life. May it not well be, that such water serving corporations, are as public in their purposes and as closely interwoven with the public interest as a small village or a school district on the one hand, or as the canal company considered in *Gue* v. *Tide Water Canal Co.*, 24 How. 257 (16 L. Ed. 635), already cited; and, therefore, not subject to execution against their property?

The judgment of the lower court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

HARRIS, J., not sitting.

---

Motion to affirm allowed January 21, 1919.