[No. 17184-1-III.   Division Three.   October 1, 1998.]

B.J. MATTHEWS, *Appellant*, v. WENATCHEE HEIGHTS WATER CO., ET AL., *Respondents*.

*Gregory S. McElroy* and *Michael G. Atkins*, for appellant.
*Paul R. Cressman, Jr.*, and *Paul Chuey* of *Short, Cressman & Burgess*, for respondents.

SWEENEY, J. — B.J. Matthews raises a number of thorny issues, most of which turn on the legal status of an irrigation district—Is it subject to all of the constitutional and statutory strictures of municipal corporations? Specifically, Mr. Matthews' case turns on whether a public irrigation district is a municipal corporation for purposes of WASHINGTON STATE CONSTITUTION article VIII, section 7.[1] That section prohibits a municipal corporation from owning stock in a private company. We conclude a public irrigation district does not fall within the definition of municipal corporation for the purposes of article VIII, section 7. We therefore affirm the dismissal of Mr. Matthews' challenge to the Wenatchee Heights Reclamation District's ownership interest in the Wenatchee Heights Water Company and the Spring Hill Irrigation Company.

## FACTS

Suit. In December 1996, B.J. Matthews sued to set aside the dissolutions of the Wenatchee Heights Water Company and the Spring Hill Irrigation Company. He named as defendants the companies and the Wenatchee Heights Reclamation District, the successor of the companies' assets and shares. Before the dissolutions, Mr. Matthews owned 1.9 percent of Wenatchee Heights and 13.75 percent of Spring Hill. The District owned 93.8 percent of Wenatchee Heights and 61.875 percent of Spring Hill. Mr. Matthews alleged the District lacked authority to own stock in the private water companies and, therefore, could not vote to dissolve them.

---

[1]That section provides:

"No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation."

History. Wenatchee Heights and Spring Hill were incorporated in 1920 and 1899, respectively, as private, for-profit companies. Their purpose was to construct reservoirs and ditches, appropriate water from area waterways, and divert it to the companies' shareholders. The articles of incorporation specifically authorized the companies to acquire water rights. Wenatchee Heights' articles of incorporation provided that one of its objects was "[t]o acquire, secure, control or dispose of water and water rights . . . for the purpose of irrigation, power or domestic use, or for such other uses as the Company may . . . deem advisable . . . ." Spring Hill's articles of incorporation authorized it "[t]o purchase, acquire by deed, gift or otherwise . . . ditches . . . or reservoirs now constructed, or that may hereafter be constructed, together with . . . water-rights . . . connected therewith or belonging thereto . . . ."

By the early 1980s, the infrastructures of both systems were in disrepair. The Washington State Department of Ecology made public funds available for the repair of water systems. However, only public entities could take advantage of these funds. Wenatchee Heights therefore offered its private shareholders two options. It offered to pay them market value for their shares. Alternatively, it offered to exchange those shares for water rights contracts. The contracts obligated the District to deliver water to the former shareholders so long as they paid a pro rata portion of operating costs. Mr. Matthews, and a few others, declined both options.

In 1992, the Department of Ecology restricted Wenatchee Heights' use of one of its reservoirs because it was dangerous. The company could not deliver sufficient water because of the restriction. In response, the board of directors voted to dissolve the corporation and transfer its assets to the District. The board offered its remaining shareholders the options of a cash buyout or a water rights contract. The company's shareholders approved the dissolution in 1994. Mr. Matthews signed a water rights contract with the District in exchange for shares in the company.

Spring Hill experienced similar problems. To obtain public funds for repairs and improvements, and to obtain insurance against the failure of its reservoirs, its board of directors also proposed to dissolve the corporation and transfer its assets to the District. A majority of Spring Hill's shareholders approved the dissolution in June 1996. The shareholders approved a water rights contract for individual shareholders in February 1997.

Trial Court Disposition. The District moved for summary judgment as did Mr. Matthews. The District argued Mr. Matthews' failure to pursue his shareholder dissenter's rights under RCW 23B.13[2] barred his actions. It also argued that Mr. Matthews' agreement to exchange his shares in Wenatchee Heights for a water rights contract with the District amounted to an accord and satisfaction. Mr. Matthews contended he had no choice but to sign the water rights contract; if he did not, the District would not have sold him water.

In support of his motion for summary judgment, Mr. Matthews argued that the District had violated the prohibition in WASHINGTON CONSTITUTION article VIII, section 7, that "[n]o county, city, town or other municipal corporation shall hereafter . . . become directly or indirectly the owner of any stock in . . . any association, company or corporation." He also maintained that the District violated his civil rights by not allowing him to vote on assessments under the new water rights contracts.

The District asked for an expedited summary judgment schedule because it needed to repair the water systems of both companies before irrigation season. Mr. Matthews agreed to an expedited hearing on the question of whether the District could hold stock in the water companies. But he objected to an expedited hearing on the remaining is-

---

[2]RCW 23B.13.020 provides "(1) [a] shareholder is entitled to dissent from, and obtain payment of the fair value of the shareholder's shares in the event of . . . (c) . . . a sale in dissolution . . . ." RCW 23B.13.210(1)(a) requires a dissenting shareholder to "deliver to the corporation before the vote is taken written notice of the shareholder's intent to demand payment for the shareholder's shares . . . ."

sues because the District had not answered discovery requests he believed were material to their resolution.

The trial court granted the District's motion for summary judgment. It held the District had not violated the WASHINGTON CONSTITUTION's prohibition against a municipal corporation owning assets of a private corporation, nor had it unconstitutionally deprived Mr. Matthews of voting rights. It also held that dissenter's rights under RCW 23B.13 provided Mr. Matthews his sole remedy to challenge the dissolutions. The court ruled those rights expired because Mr. Matthews failed to timely exercise them. Finally, the court held Mr. Matthews' signature on the water rights agreement with the District amounted to an accord and satisfaction of his claims against Wenatchee Heights.

DISCUSSION

Irrigation District Ownership in Private Companies. Mr. Matthews first contends the District's ownership of stock in the two private water companies violated article VIII, section 7 of the WASHINGTON CONSTITUTION. And, because the District's stock holdings were illegal, it could not vote as majority shareholder to dissolve the water companies.

The Washington Supreme Court has held an irrigation district is a municipal corporation in certain circumstances. See, e.g., Housing Auth. v. Sunnyside Valley Irrigation Dist., 112 Wn.2d 262, 265, 772 P.2d 473 (1989) (district is municipal corporation under statute exempting housing authorities from assessments of any political subdivision); Haberman v. Washington Pub. Power Supply Sys., 109 Wn.2d 107, 170-71, 744 P.2d 1032, 750 P.2d 254 (1987) (district exempt from Consumer Protection Act as a municipal corporation); Roza Irrigation Dist. v. State, 80 Wn.2d 633, 640, 497 P.2d 166 (1972) (district a municipal corporation subject to public employees collective bargaining statute); Outlook Irrigation Dist. v. Fels, 176 Wash. 211, 219, 28 P.2d 996 (1934) (district a municipal corporation insofar as it

may employ statutory procedures for the enforcement of assessment liens); *State ex rel. Clancy v. Columbia Irrigation Dist.*, 121 Wash. 79, 84, 208 P. 27 (1922) (district a municipal corporation with regard to right to make contracts).

■ But in other contexts, the term "municipal corporation" does not include irrigation districts. A municipal corporation is a political arm of the state. It therefore has the power to regulate and administer the local and internal affairs of the area covered by the corporation. *Roza Irrigation Dist.*, 80 Wn.2d at 636. In its broad sense, the term includes quasi-public corporations created as instrumentalities of the state for limited purposes. *Id.* The court has consistently said that irrigation districts are municipal corporations only in the broad sense, and are more accurately described as "quasi-municipal corporations." *Columbia Irrigation Dist. v. Benton County*, 149 Wash. 234, 239, 270 P. 813 (1928); *Roza Irrigation Dist.*, 80 Wn.2d at 636. Whether the Legislature meant to use the term "municipal corporation" in its broad sense (and thus include irrigation districts), or in its strict and proper sense (which would exclude irrigation districts), is a matter of statutory construction. *Id.*

Where the term "municipal corporation" is used in the WASHINGTON CONSTITUTION, the Supreme Court usually has given the term its strict meaning. For example, in *Columbia Irrigation Dist.*, 149 Wash. at 235, the court said that the exemption from taxes for property "of the United States and of the state, counties, school districts, and other municipal corporations" under former CONSTITUTION article VII, section 2, did not include irrigation districts or other quasi-municipal corporations.[3] The court distinguished a line of cases that concluded irrigation districts were "municipal corporations." In all of those cases, the entity in question either exercised functions necessary to the existence of public corporations, such as the right to make contracts and to sue and be sued, or operated under specific

---

[3]The exemption is now at CONSTITUTION article VII, section 1, but is worded in relevant part the same as it was under former section 2.

statutes which the court construed to include municipal corporations in the broad sense. *Id.* at 238-40 (citing *Burbank Irrigation Dist. No. 4 v. Douglass*, 143 Wash. 385, 255 P. 360, 259 P. 881 (1927); *Clancy*, 121 Wash. 79; *Whitten v. Silverman*, 105 Wash. 238, 177 P. 737 (1919); *Peters v. Union Gap Irrigation Dist.*, 98 Wash. 412, 167 P. 1085 (1917); *Brown Bros. v. Columbia Irrigation Dist.*, 82 Wash. 274, 144 P. 74 (1914)).

Of particular significance to our analysis here is *Board of Dirs. v. Peterson*, 4 Wash. 147, 29 P. 995 (1892), relied on by the *Columbia Irrigation* court. *See Columbia Irrigation Dist.*, 149 Wash. at 235-37. In *Peterson*, the court concluded that CONSTITUTION article VIII, section 6, which limits the indebtedness of every "county, city, town, school district, or other municipal corporation," did not include irrigation districts. *Peterson*, 4 Wash. at 155. Except for the exclusion of school districts, the pertinent language of CONSTITUTION article VIII, section 7 is worded the same as section 6.

We have found only one case in which the court included irrigation districts in a constitutional provision referring to municipal corporations: *Washington Nat'l Inv. Co. v. Grandview Irrigation Dist.*, 175 Wash. 644, 28 P.2d 114 (1933). There, the court applied the privileges and immunities clause, which prohibits the passage of laws granting unequal privileges or immunities to "any citizen, class of citizens, or corporation other than municipal[.]" CONST. art. I, § 12. Without analysis or citation to authority, the court said irrigation districts are municipal corporations within the meaning of the privileges and immunities clause. *Grandview Irrigation Dist.*, 175 Wash. at 648.

█ We conclude the term "municipal corporation" in article VIII, section 7, is limited to its strict and proper meaning, and therefore excludes quasi-public corporations with limited purposes, such as irrigation districts. The District then did not violate article VIII, section 7 of the WASHINGTON CONSTITUTION by holding stock in the two water companies.

Taxation of Water Users Outside of District Boundaries. Mr. Matthews next contends RCW 87.03.045 and the provisions of the District's water agreements violate the WASHINGTON CONSTITUTION's guarantee of free and equal elections. *See* CONST. art. I, § 19. The statute and the water agreements give the District the authority to tax and regulate him, but deny him the right to vote because he lives outside the District. This contention is also the basis for Mr. Matthews' 42 U.S.C. § 1983 claim.

Mr. Matthews relies on *Foster v. Sunnyside Valley Irrigation Dist.*, 102 Wn.2d 395, 687 P.2d 841 (1984). The concern there was the validity of the Sunnyside Irrigation District's assessments. Plaintiffs owned residential lots in the district that had been divided from farmland. The lots did not have access to irrigation water but the district continued to assess them anyway. The plaintiffs successfully challenged the assessments on the ground the district had deprived them of the right to vote in district elections. *Id.* at 410.

■ ■ *Foster* is distinguishable. There, the plaintiffs resided within the water district's boundaries, were involuntarily subject to the district's assessments, and could not vote in district elections despite the direct and significant burden they bore as a result of the district's operation. Here, Mr. Matthews' property is outside the District's boundaries and he therefore can choose whether to accept the District's water agreements.

Mr. Matthews' situation is closer to *King County Water Dist. No. 54 v. King County Boundary Review Bd.*, 87 Wn.2d 536, 554 P.2d 1060 (1976). In *King County*, the court held water district users who lived outside the city that managed the water district could be deprived of the right to vote in municipal general elections without offending the constitution. "The City Council's authority in this regard is clearly legislative in nature, . . . but is accompanied by sufficient standards and safeguards to satisfy constitutional requirements." *Id.* at 546. Specifically, "[t]he legislature has imposed a standard of uniformity of water rates for the same class of customers or service. RCW

35.92.010." *Id.* "Moreover, nonresidents of the city are protected from truly discriminatory, arbitrary, and unreasonable rates by the courts." *Id.* In addition, nonresidents could attend and participate in public meetings conducted by the city council. *Id.*

Like the plaintiffs in *King County*, Mr. Matthews' property is outside the management district's boundaries. The District's assessments affect him, but he is protected by statutory guidelines and procedural safeguards. RCW 87.03.240 requires that the District's assessments "shall be made in proportion to the benefits accruing to the lands assessed and equitable credit shall be given . . . ." RCW 87.03.250 requires that the District's secretary prepare and complete an assessment roll and deliver it to the District's board every year. The board must give notice, including published notice, that it will meet to equalize assessments. The assessment roll must remain in the office of the District secretary for inspection by any interested person. RCW 87.03.250.

These guidelines and safeguards "protect against injustice on account of unnecessary and uncontrolled discretionary power." *King County*, 87 Wn.2d at 545. And therefore the District's exclusion of nonresidents from voting does not violate the constitution or deprive Mr. Matthews of his civil rights.

Failure To Continue Summary Judgment Motion for Discovery. Mr. Matthews asserts the court erred when it refused to let him complete discovery before dismissing his case. He claims the water companies were mutual (nonprofit) corporations, despite their registration as for-profit corporations, and they serve as trustees of their shareholders' water rights and water conveyances. They therefore were without authority to transfer assets to the District on dissolution. But the cases Mr. Matthews relies on pit the rights of irrigation company shareholders against third party claimants of corporate assets, not the rights of the shareholders among each other. These latter rights are at issue here.

In *Eldredge v. Mill Ditch Co.*, 90 Or. 590, 177 P. 939 (1919), the question was whether a creditor of a water company could levy upon water rights. The court held the company had no interest in those rights, which would permit it to sell or transfer them to outside parties. The company held its property for the benefit of its stockholders alone. Because the company used its property for the purpose of transmitting and delivering water appropriated by the shareholders, and used upon their respective land, it *"ought not to be permitted to be sold upon an execution against the water corporation."* *Id.* at 596 (emphasis added). The court also noted that "the water and ditch rights really belong to the individual appropriator and are appurtenant to the lands upon which the same are used . . . ." *Id.* Hence, the corporation was in the nature of a holding company or trustee for the true owners of the water rights, who were the shareholders. *Id.*

Mr. Matthews also relies upon *Huxtable v. Berg*, 98 Wash. 616, 168 P. 187 (1917). Again, the question there was whether a company creditor could levy on water rights and structures. The court held that assessment against the shareholders was the proper remedy. However, the court noted that "[s]ome complaint is made because the trial court did not find that the property levied on was 'in fact . . . the property of the stockholders . . .' and was not the property of the corporation, even though the legal title stood in it." *Id.* at 624. The court concluded *"[t]he decision of this question does not seem to us necessary, and we express no opinion thereon."* *Id.* (Emphasis added.)

One commentator suggests that "the solution of legal problems arising between the water user and the ditch company or between the company and third persons is not aided appreciably by a determination of who owns the appropriation right." 3 ROBERT E. BECK, WATERS AND WATER RIGHTS § 26.03(a), at 496 (3d ed. 1991) (citing F. TRELEASE, WATER LAW: RESOURCE USE AND ENVIRONMENTAL PROTECTION 621 (1974)). There are "difficulties inherent in treating

shareholder rights [in a water company] as independent water rights[.]" *Badger v. Brooklyn Canal Co.*, 922 P.2d 745, 749 (Utah 1996).

"[T]he formation of an irrigation corporation constitute[s] a 'contract between the shareholders for the pooling and distribution of water.' " *Badger*, 922 P.2d at 749 (quoting *Salt Lake City Corp. v. Cahoon & Maxfield Irrigation Co.*, 879 P.2d 248, 252 (Utah 1994)). The contract provides benefits for the shareholder. Individual holders of water rights "might meet insuperable obstacles in attempting to maintain their own diversion points and canal or pipe systems . . . ." *Badger*, 922 P.2d at 749. But, "pooling of resources under a contractual corporate system permits many individuals to benefit from the resources available through unified action." *Id.*

With the benefit of unified action also comes the sacrifice of individual action. *Id. Badger* cites as an example the governance of a mutual water corporation which is by a *majority* who control the obligations of *all* the shareholders. *Id.* at 750. The court held that shareholders in an irrigation company had no individual right of action to contest the company's application for a change in a water diversion point approved by a majority. *Id.* at 750-51.

■■ Here, a majority of the shareholders have voted to dissolve the corporations and transfer assets to the District. And the majority approved the consideration for that transfer. These shareholders voluntarily associated for a common purpose. They now have agreed by a majority to dissolve the association. Mr. Matthews must accept the majority will to dissolve the companies, just as he accepted the benefits of pooling his water rights and water conveyances.

Since the status of the companies as mutual, nonprofit corporations would not change the rights of shareholders among themselves, the issue is not material. Consequently,

Mr. Matthews' lack of discovery regarding this issue did not prejudice him.[4]

Accord and Satisfaction. Mr. Matthews asserts issues of fact remain as to whether his acceptance of the District's water agreement, in exchange for his shares in Wenatchee Heights, constituted an accord and satisfaction, or whether he signed the agreement under duress.[5]

■■■ "The elements of accord and satisfaction are (1) a bona fide dispute, (2) an agreement to settle that dispute, and (3) performance of the agreement." *Housing Auth. v. Northeast Lake Wash. Sewer & Water Dist.*, 56 Wn. App. 589, 596, 784 P.2d 1284, 789 P.2d 103, *review denied*, 115 Wn.2d 1004 (1990). Mr. Matthews contends there was no agreement to settle the dispute over the corporate dissolution because he had to accept the water agreement to secure irrigation water.

Duress requires more than reluctance to accept or financial embarrassment. *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 944, 640 P.2d 1051 (1982). "The assertion of duress must be proven by evidence that the duress resulted from the other's wrongful or oppressive conduct." *Id.* Here, Mr. Matthews did not allege facts sufficient to raise an issue as to

---

[4]Shareholders in a mutual corporation have dissenter's rights similar to those in for-profit corporations: "Any . . . shareholder . . . shall have the right to dissent from any of the following corporate actions: . . . (2) Any sale . . . of all . . . of the property and assets of the corporation not made in the . . . regular course of its business, including a sale in dissolution . . . ." RCW 24.06.245(2). The dissenter "shall file with the corporation, prior to or at the meeting of . . . shareholders at which such proposed corporate action is submitted to a vote, a written objection to such proposed corporate action." RCW 24.06.250. If the action is approved and the shareholder voted against it, the shareholder "may, within ten days after the date on which the vote was taken . . . make written demand . . . for payment of the fair value of . . . such shareholder's shares . . . ." RCW 24.06.250. Also "[a]ny . . . shareholder failing to make demand within the ten day period shall be bound by the terms of the proposed corporate action." RCW 24.06.250. RCW 23B.13.020 provides for parallel dissenter rights. Mr. Matthews failed to exercise his rights under either RCW 24.06 or 23B.13.

[5]Mr. Matthews apparently signed only the water agreement offered by the District in exchange for his stock in Wenatchee Heights. The record includes a copy of the agreement the District offered in exchange for Spring Hill stock, but it does not contain Mr. Matthews' signature.

whether he was "deprived of his free will at the time he entered into the challenged agreement . . . ." *Id.* at 944-45.

Remedy Outside of Dissenter's Rights. Finally, Mr. Matthews contends the trial court erred when it held dissenter's rights provided his sole remedy.

█ The remedy provided under the dissenter's right statute to a minority shareholder that opposes any corporate decision or action is "exclusive as to unfairness or breach of fiduciary duty *short of actual fraud." Matteson v. Ziebarth,* 40 Wn.2d 286, 297, 242 P.2d 1025 (1952) (emphasis added). Here, Mr. Matthews has not alleged the District acted fraudulently. He therefore was limited to relief provided by RCW 23B.13.020. There was no error.

Affirmed.[6]

KURTZ, A.C.J., and KATO, J., concur.

Reconsideration denied November 12, 1998.

Review denied at 137 Wn.2d 1029 (1999).

---

[6]The court also has considered the Wenatchee Heights Reclamation District's and the other respondents' motion to strike portions of Mr. Matthews' brief on appeal, Mr. Matthews' response to that motion, and the District's reply. The motion is denied.