Honorable James L. Nagle Walla Walla County Prosecuting Attorney 240 West Alder, Suite 201 Walla Walla, WA 99362-2807 —
Dear Prosecutor Nagle:
By letter previously acknowledged, you requested our opinion on the following questions, which we have paraphrased and reordered for analysis:
 1. Where a "water distribution district for irrigation" was formed in 1956 under former RCW 87.60 (Laws of 1921, ch. 106), and that chapter was repealed in 1971 (Laws of 1971, ch. 76, § 6), can such a district still exist as a legal entity, even though its enabling legislation was repealed?
 2. Are water distribution districts for irrigation formed under former RCW 87.60 reclassified as irrigation districts under RCW 87.03 or as water-sewer districts under RCW 57.02?
 3. Is a district created under former RCW 87.60 a "special purpose district" as defined by RCW 36.96.010? If the district is a special purpose district under RCW 36.96.010, does the fact that no new appointments to the board have been made for over seven years meet the test for an inactive special purpose district under RCW 36.96.010(3)?
 4. If the district still exists and is not "inactive" for purposes of RCW 36.96.010(3), how are the vacancies on the board filled? Can the county board of commissioners appoint a member to fill one of the vacancies on the water distribution district board, and then have the two members of the [original page 2] board fill the third vacancy pursuant to RCW 42.12.070? If the vacancies on the board are filled, under what statutes does the district then operate?
 BRIEF ANSWERS
A water distribution district for irrigation formed under former RCW 87.60 cannot lawfully operate under the repealed enabling legislation. In the absence of legislation reclassifying or providing a process for the reincorporation of such an entity as a different type of local government entity, any district formed under the 1921 enabling legislation ceased to exist upon that legislation's repeal. We conclude that water distribution districts for irrigation were not reclassified as irrigation districts or water-sewer districts because we have found no statute that would provide for such a reclassification. Because water distribution districts for irrigation were dissolved by legislative repeal of their enabling legislation, we need not reach your third and fourth questions.
 BACKGROUND
In 1921, the Legislature enacted former RCW 87.60 to authorize the creation of entities it termed "water distribution districts for irrigation" according to procedures outlined in that act. Laws of 1921, ch. 106. The act provided for the governance of these districts by a board of trustees with oversight by the board of county commissioners and the state hydraulic engineer, [1] and the act detailed the districts' powers and duties.
The districts' powers were relatively few as compared with irrigation districts, which were already authorized under separate legislation.[2]
The Legislature authorized this new class of local government entity to employ a "ditch master," whose job was to apportion water diverted from streams for irrigation purposes to the lands in the district according to their rights. Id. § 6(1). In addition, under the "general supervision and control of the state hydraulic engineer" and upon a majority vote of the landowners within the district, such a district could "improve the[original page 3] system of the distribution of water for irrigation" by acquiring rights of way for ditches, constructing new ditches, and repairing existing ones. Id. §§ 6(2); 12-17. To carry out these purposes, a district could employ day labor, contract for engineering and legal services, and prosecute and defend actions, including condemnation actions, in its own name. Id. §§ 6(2), (4); 11.
The decision of whether to create a district resided with the board of county commissioners after hearing a petition presented by two or more property owners holding certificates of the right to divert waters.Id. §§ 2, 5. The act afforded the owners of properties proposed to be included in a district's boundaries a right to notice and an opportunity to be heard by the board of county commissioners on the question of the district's creation and its boundaries. Id. § 5.
While the Legislature provided a relatively simple process for forming a district, [3] it also placed significant limits on the autonomy of the districts and their boards. Districts were to be administered by a board of trustees, comprised of three resident property owners who were appointed by, and served at the pleasure of, the state hydraulic engineer. Id. § 6. District operations were to be financed by taxes levied not by the district's board of trustees, compare RCW 57.08.005(17) (authorizing irrigation districts to levy taxes), but by the board of county commissioners on properties within the district as part of "the general tax against such property." Laws of 1921, ch. 106, §§ 7, 8. Each year, the board of trustees was required to provide the board of county commissioners with an estimate of the district's expenses for the ensuing year "as a basis for the annual tax levy against the property in the district." Id. § 3. Taxes were limited to ten mills (one cent) on the dollar of property value, except that the board of trustees could submit a plan for improvement of the water distribution system to a vote of the landowners in the district and, if approved by a majority, the taxing limit increased to twenty-five mills (two and a half cents) on the dollar of property value. Id. §§ 7, 12-17. Except in the case of an emergency, districts were prohibited from "contract[ing] obligations in any year in excess of the estimated revenues for that year". Id. § 10. The districts were not authorized to finance improvements by the issuance of bonds.[4]
In 1971, after fifty years without a single amendment, RCW 87.60 was repealed as one of several "obsolete or inactive materials relating to various local government units and agencies." Laws of 1971, ch. 76, § 6(77)-(96). As your question indicates, the 1971 repeal act included no [original page 4] provision for reclassifying any such districts that might have been in existence at that time or any process for disposition of property.[5]
A water distribution district for irrigation was formed in Walla Walla County in 1956. The state hydraulic engineer (or its successor) appointed three resident property owners to act as the board of trustees with no limitation as to their terms. No new appointments were ever made, and two of the board members are now deceased. You indicate that the surviving member of the district's board now wishes to have the district enter into transactions and conduct other business.
 ANALYSIS 1. Where a "water distribution district for irrigation" was formed in 1956 under former RCW 87.60 (Laws of 1921, ch. 106), and that chapter was repealed in 1971 (Laws of 1971, ch. 76, § 6), can such a district still exist as a legal entity, even though its enabling legislation was repealed?
We conclude that the repeal of the authorizing statutes for water distribution districts for irrigation automatically resulted in the dissolution of all such districts formed pursuant to them. That is because municipal corporations[6] are creatures of statute. City ofTacoma v. Taxpayers of City of Tacoma, 108 Wn. 2d 679, 685-6; 743 P.2d 793
(1987) (citing 2 Eugene McQuillin, Municipal Corporations § 10.09 (3d rev. ed. 1979)). They are accordingly limited in powers "to those granted in express words, or to those necessarily or fairly implied in or incident to the powers expressly granted, and also to those essential to the declared objects and purposes of the corporation." Okeson v. City ofSeattle, 159 Wn.2d 436, 445, 150 P.3d 556 (2007); see also Chemical Bankv. Wash. Pub. Power Supply System, 99 Wn.2d 772, 792, 666 P.2d 329
(1983). "If there is a doubt about a claimed grant of power, it must be denied." King Cy. Water Dist. v. Port of Seattle, 63 Wn. App. 777, 782,822 P.2d 331, rev. den. 119 Wn.2d 1002, 832 P.2d 487 (1992). "A municipal corporation is merely an agency instituted by the sovereign for the[original page 5] purpose of carrying out in detail the objects of government." 2 Eugene McQuillan, Municipal Corporations, § 4.6 (3d rev. ed. 2006). "In the absence of any constitutional restriction the legislature may at any time repeal the charter of a municipal corporation, or otherwise terminate its existence, or abolish it at will." 56 Am.Jur.2d Municipal Corporations, Counties, And Other PoliticalSubdivisions § 77 (2000).
The principles set forth above lead us to the conclusion that a water distribution district for irrigation formed under the repealed RCW 87.60 cannot lawfully continue to operate when its enabling legislation has been repealed. There simply is no legal platform for a previously formed district to stand on, nor are there any laws describing how the prior district is to perform its duties. When the Legislature establishes a class of local government, it necessarily decides what substantive powers it will delegate to such an entity, and the entity derives its authority from that delegation. The Legislature also determines what rights the residents to be included within the district will have regarding establishment of the entity, what processes there will be for political representation on the governing board, what rights residents will have concerning taxation, and whether the entity may incur debt that would encumber residents' property into the future. When such statutory provisions are repealed, the district is left without authority to operate. See Okeson, 159 Wn.2d at 445 (noting the dependence of municipal corporations upon statutory authority in order to act).
The Washington State Constitution gives the Legislature the power to create "[c]orporations for municipal purposes" by general laws, "which laws may be altered, amended or repealed." Const. art. XI, § 10. We are aware of no provision in the state constitution restricting the Legislature's authority to repeal a general law authorizing a class of municipal corporation. Thus, in the absence of legislation reclassifying or providing a process for the reorganization of such an entity as a different type of local government entity, any district formed under the 1921 enabling legislation would have ceased to exist upon that legislation's repeal. The Legislature's power over these political subdivisions of the state is plenary unless restrained by the constitution. King Cy. Water Dist. 54 v. King Cy. Boundary Review Bd.,87 Wn.2d 536, 540, 554 P.2d 1060 (1976).[7]
 2. Are water distribution districts for irrigation formed under former RCW 87.60 reclassified as irrigation districts under RCW 87.03 or water-sewer districts under RCW 57.02?
The 1971 act that repealed RCW 87.60 simply repealed the statutes authorizing the creation of water distribution districts for irrigation without making any provision for then-existing districts. In doing so, it did not provide for reclassification of "water distribution districts for irrigation" as any other type of entity. In the absence of any statute reclassifying [original page 6] water distribution districts for irrigation into another kind of municipal corporation, we find no authority to support a conclusion that such a conversion occurred.
Admittedly, irrigation districts and water-sewer districts possess, among their numerous other powers, statutory authority overlapping that previously delegated to water distribution districts for irrigation (notably, the irrigation districts' power to acquire and maintain irrigation works. RCW 87.03.015). By itself, however, this is not enough to raise an inference that the Legislature intended to reclassify entities created under RCW 87.60 as either irrigation districts or water-sewer districts. As stated previously, municipal corporations are limited to those powers granted in express words or to those necessarily or fairly implied in or incident to the powers expressly granted.Okeson, 159 Wn.2d at 445.
Furthermore, there is no argument that the Legislature intended irrigation districts or water-sewer districts as "successors" to districts created under RCW 87.60. Legislation authorizing both "irrigation districts" and "water-sewer districts" (previously "water districts") predates the legislation authorizing "water distribution districts for irrigation" described above and remains in existence today. See RCW 87.03-.80 (current chapters pertaining to irrigation districts); see also Laws of 1889-90, pp. 671-706; Laws of 1917, ch. 162; Laws of 1921, ch. 129. See RCW 57.02-.90 (current chapters pertaining to water-sewer districts); see also Laws of 1913, ch. 161; Laws of 1929, ch. 114. Neither the statute repealing RCW 87.60 nor any contemporary laws express an intent to convert water distribution districts to a different type of district, or describe how that might be accomplished.
Of course, it does not appear that there would be anything to prevent the residents of a former water distribution district for irrigation from initiating the process for forming either a new irrigation district, RCW87.03.005, or a new water-sewer district, RCW 57.04.030, encompassing the same territory as the former water distribution district for irrigation.
 3. Is a district created under former RCW 87.60 a "special purpose district" as defined by RCW 36.96.010? If the district is a special purpose district under RCW 36.96.010, does the fact that no new appointments to the board have been made for over seven years meet the test for an inactive special purpose district under RCW 36.96.010(3)?
 4. If the district still exists and is not "inactive" for purposes of RCW 36.96.010(3), how are the vacancies on the board filled? Can the county board of commissioners appoint a member to fill one of the vacancies on the water distribution district board, and then have the two members of the board fill the third vacancy pursuant to RCW 42.12.070? If the vacancies on the board are filled, under what statutes does the district then operate?
As explained above, we conclude that any district formed under former RCW 87.60 ceased to exist upon the repeal of its enabling legislation. Your remaining questions concern whether the board of county commissioners may dissolve a district under the process described in RCW36.96.010 for inactive districts and how vacancies on the district's board could be filled. [original page 7] Because such districts were effectively dissolved when the Legislature repealed RCW 87.60, we need not address your third and fourth questions.
We hope the foregoing will prove useful.
ROB MCKENNA Attorney General
JONATHAN THOMPSON Assistant Attorney General
:pmd
[1] The governor-appointed position of "state hydraulic engineer" was created by the 1917 Water Code, Laws of 1917, ch. 117 § 6, "to control all of the waters of the state for irrigation purposes, including those which had theretofore been lawfully appropriated or acquired". West SideIrrigating Co. v. Chase, 115 Wash. 146, 150-51, 196 P. 666 (1921). The powers and duties of that official devolved over the years to various other officials and agencies (see note following Laws of 1961, ch. 19), and currently reside with the director of the department of ecology.Compare Laws of 1917, ch. 117, § 8 (powers and duties of the state hydraulic engineer under the 1917 Water Code) with RCW 43.21A.064 (powers and duties of the director of the department of ecology pertaining to water resources).
[2] See Laws of 1889-90, pp. 671-706; Laws of 1917, ch. 162; Laws of 1921, ch. 129. The act creating water distribution districts for irrigation provided that "nothing herein contained shall be construed as affecting, superseding, or repealing any of the provisions of law relating to Irrigation Districts." Laws of 1921, ch. 106, § 19. Current laws pertaining to irrigation districts are codified at RCW 57.02
through RCW 57.90.
[3] Both irrigation districts and water districts (which were reclassified as water-sewer districts in 1996), cannot be organized without an election. RCW 87.03.020; RCW 57.04.050.
[4] In contrast, both irrigation and water districts are, and were prior to 1921, authorized to issue bonds for the financing of improvements. RCW 57.20; Laws of 1913, ch. 161, § 11; RCW 87.03.200; Laws of 1889-90, p. 679, § 15.
[5] It may have been that the 1971 Legislature was unaware that any "water distribution districts for irrigation" were actually still operating, or the repeal would have included some language specifying how the affairs of such a district should be wound up.
[6] The fact that the board of county commissioners could levy taxes on behalf of the water distribution districts for irrigation under RCW 87.60, that inclusion within district boundaries could be imposed involuntarily by decision of the county commissioners, and that any plans for improvement were subject to the approval of the "state hydraulic engineer" all support the conclusion that the Legislature intended for these entities to be municipal or "quasi-municipal" corporations. SeeShimada v. Diking Dist. 12 of Skagit Cy., 139 Wash. 168, 245 P. 916
(1926) (finding that a diking district was a public rather than private corporation based on similar considerations); Drum v. Univ. Place Water Dist., 144 Wash. 585, 258 P. 505 (1927) (public corporations performing duties within a restricted area are "municipal corporations"); Matthewsv. Wenatchee Heights Water Co., 92 Wn. App. 541, 963 P.2d 958 (1998) ("In its broad sense, the term `municipal corporation' includes quasi-public corporations created as instrumentalities of the state for limited purposes").
[7] Our analysis is not altered by the apparent fact that certain functions continued to be performed in the district's name after the repeal of the authorizing legislation. Washington courts, like those of other states, have recognized a doctrine of "de facto municipal corporations." However, that doctrine would not apply to continue the existence of a district after the repeal of its authorizing legislation, because the doctrine applies "only where there is a valid law under which the corporation might have been created de jure." Drum v. Univ. PlaceWater Dist., 144 Wash. 585, 588-89, 258 P. 505 (1927).